

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**06/26/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| **F. JOSEPH MORRISON; aka MORRISON** | § | **Case No. 05-45926** |
| **UNLIMITED; aka RELIEF PHYSICIANS** | § | |
| **OF TEXAS,** *et al*, | § | |
| Debtor(s). | § | |
| | § | **Chapter 7** |
| | § | |
| **F. JOSEPH MORRISON,** *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **Adversary No. 08-03260** |
| | § | |
| **AMWAY CORPORATION, ET AL,** *et al*, | § | |
| Defendant(s). | § | **Judge Isgur** |

## MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS

### Background

Plaintiffs are former distributors for Amway Corporation ("Amway").  Distributors sold Amway's line of household products and recruited additional distributors.  Distributors derived profits from their individual sales and from the sales of the recruited distributors.  Recruited distributors are called "down-liners" and the recruiting distributors are called "up-liners."

In January of 1998, Plaintiffs filed a state court lawsuit alleging that Amway, related entities, and up-liners were improperly calculating distributions ("the Amway Defendants").[1] Plaintiffs' claims ranged from defamation to RICO.  The Amway Defendants removed the

---

[1] The Amway Defendants include: Amway Corporation, Dexter Yager individually and doing business as Yager Enterprises and Internet Services Corporation, Jeff Yager, Donald Wilson individually and doing business as Wow International and Wilson Enterprises, Inc., Randy Haugen, John Sims, Jody Victor, and The International Business Owner's Association International.

lawsuit to the Federal District Court and sought to stay the lawsuit to enforce the arbitration clause in their contracts with Plaintiffs.[2]

All distributors had to execute a Distributorship Agreement Application.  Under the Distributorship Agreement, distributors agreed to abide by Amway's Regulations and Rules of Conduct for Distributors, and any amendments to those Rules and Regulations.  Distributors were required to renew the agreement annually by signing either an automatic renewal agreement or an annual "Intent to Continue" form.

In September of 1997, Amway announced it was instituting a new arbitration program. Amway required distributors to sign an "Acknowledgment Form" or "Intent to Continue Form" containing a new arbitration provision.  The arbitration provision required mandatory arbitration of "any . . . claim or dispute arising out of or relating to [an] Amway distributorship, the Amway Sales and Marketing Plan, or the Amway Rules of Conduct (including any claim against another Amway distributor, or any such distributor's officers, directors, agents or employees, or against Amway Corporation, or any of its officers, directors, agents or employees)."  However, the Acknowledgment Form also stated that the arbitration provision "automatically became part of your agreement with Amway."  Most Plaintiffs did not sign the Acknowledgment Form.

In the Federal District Court, Plaintiffs challenged the enforceability of the arbitration provisions.  Plaintiffs alleged that only one-third of Plaintiffs had executed the Acknowledgment Form and that even if Plaintiffs had executed an agreement that incorporated the arbitration provision, the provision was unconscionable and therefore unenforceable.  The District Court rejected Plaintiffs' arguments and issued a memorandum opinion and order staying the lawsuit pending arbitration. *Morrison v. Amway Corp.*, 49 F. Supp. 2d 529 (S.D. Tex. 1998). The

---

[2] Two separate state court lawsuits were filed, asserting similar claims.  The parties refer to one suit as the Morrison Suit and the second suit as the Hamilton Suit.  The suits remain separate suits in the District Court but members from both groups have joined this complaint.  The present adversary proceeding includes parties from both suits.

District Court found that Plaintiffs had agreed to the arbitration provision through execution of the Distributorship Agreements. *Id*. at 533. The District Court noted that the Distributor Agreements required distributors to abide by Rules of Conduct and other rules, requirements, and regulations, as amended from time to time. *Id*. The District Court reasoned that the arbitration provision constituted a rule, requirement, or regulation under the Distributor Agreement. *Id*.

The District Court also held that the arbitration provision was not unconscionable. *Id*. at 533–34. The District Court found that Plaintiffs failed to demonstrate that Amway coerced the arbitration provision upon Plaintiffs through excessive bargaining power or greater sophistication. *Id*. at 534. Nor did Plaintiffs demonstrate that the substance of the arbitration provision was without any legitimate commercial purpose such that no reasonable person would agree to such a provision. *Id*.

The parties pursued arbitration from 2001 to 2004.  After three weeks of evidentiary hearings and post-hearing briefing, the arbitrator found for Plaintiffs on the Amway Defendants' counterclaims and for the Amway Defendants on Plaintiffs' claims.  Accordingly, the arbitrator found that both Plaintiffs and the Amway Defendants were prevailing parties entitled to legal fees.  After an evidentiary hearing on legal fees, the arbitrator awarded legal fees of approximately $1,000,000.00 to Plaintiffs and legal fees of approximately $7,000,000.00 to the Amway Defendants.  The arbitrator awarded the Amway Defendants a judgment in the amount of the difference, approximately $6,000,000.00.  The judgment was awarded against all Plaintiffs, with joint and several liability.

Plaintiffs filed a motion to vacate the $6,000,000.00 judgment, alleging that the arbitrator had an impermissible conflict because she was trained by the Amway Defendants.  On

September 15, 2005, the District Court issued an order denying the motion. *Morrison v. Amway*, Civil Action No. H-98-0352 (S.D. Tex. Sept. 15, 2005). The District Court reasoned that Plaintiffs knew or should have known that the arbitrator was selected and trained by the Amway Defendants. *Id.* Because Plaintiffs knew or should have known of a potential conflict before the arbitrator awarded the judgment, the District Court held that Plaintiffs waived their objections. *Id.*

Numerous Plaintiffs filed individual bankruptcy petitions in response to the judgment. Amway or its successor in interest, Alticor, filed proofs of claim in the individual bankruptcy cases for the full amount of the judgment.

Plaintiffs also appealed the District Court orders staying litigation and denying the motion to vacate.  On February 6, 2008, the Fifth Circuit reversed the District Court's orders. *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008). The Fifth Circuit held that the arbitration provision was unenforceable because Amway could unilaterally amend the provision and make the amendment retroactive. *Id.* at 254–57. The Fifth Circuit remanded the lawsuit back to the District Court. *Id.* at 258.

### Pending Bankruptcy Adversary Proceeding

On July 21, 2008, Plaintiffs filed this adversary proceeding.  Plaintiffs allege that the Amway Defendants:

- Conspired to insulate themselves from liability to Plaintiffs by establishing an arbitration scheme that ensured Plaintiffs' claims would be denied.

- Selected and indoctrinated the arbitrator to ensure a favorable ruling.

- Failed to disclose the nature of the selection or training process or the fact that Plaintiffs could be held liable for the Amway Defendants' arbitration costs.

Plaintiffs allege that if they had known these undisclosed facts, that they would have dismissed their claims rather than pursuing them in arbitration. After the arbitrator awarded the judgment, Plaintiffs allege that the Amway Defendants' attempts to enforce the judgment caused Plaintiffs' bankruptcy filings and associated financial losses. Plaintiffs allege that the Amway Defendants offset the now-vacated judgment by refusing to pay Plaintiffs' commissions and thereafter refused to renew Plaintiffs' Distributor Agreements.

Based on the Amway Defendants' alleged scheme to defraud Plaintiffs of their claims and the Amway Defendants' subsequent attempts to enforce the vacated arbitration judgment, Plaintiffs assert the following causes of action: fraud, misrepresentation, negligent misrepresentation, breach of contract, breach of fiduciary duty, breach of duty of good faith and fair dealing, conspiracy, joint enterprise, and conversion. Plaintiffs seek actual damages, legal fees and costs, and exemplary damages.

### Scope of this Memorandum Opinion

In response to Plaintiffs' complaint, the Amway Defendants filed motions to withdraw the reference and motions to dismiss. On December 8, 2008, the Court held a hearing on the motions. Various supplemental briefs and an amended complaint were filed after the hearing. The Court has issued a Report and Recommendation recommending denial of the Amway Defendants' motions to withdraw the reference. This Memorandum Opinion considers only the Amway Defendants' motions to dismiss. For the reasons set forth below, the Court denies the Amway Defendants' motions to dismiss.

The Amway Defendants seek dismissal for multiple reasons, but focus on two arguments. First, the Amway Defendants contend that the *Noerr-Pennington* doctrine immunizes them from liability from Plaintiffs' complaint. The *Noerr-Pennington* doctrine and the First Amendment

right to petition the government generally protect a party from liability allegedly stemming from a lawsuit.   Second, the Amway Defendants contend that the Court lacks subject matter jurisdiction over Plaintiffs' claims because the claims will have no effect on Joseph Morrison's bankruptcy estate.

The Court rejects the Amway Defendants' arguments.  Plaintiffs' complaint essentially contends that the Amway Defendants defrauded them of various contract and tort claims and obtained a fraudulent judgment against them by creating a fraudulent arbitration scheme.  For the purposes of this opinion, this Court must assume the accuracy of Plaintiffs' allegations. Accordingly, the balance of this opinion assumes—without finding—that the arbitration scheme was fraudulently designed.

The damages at issue arise from the creation and implementation of the alleged fraudulent arbitration scheme, not from a petition to the arbitrator or the District Court.  *Noerr-Pennington* immunizes petitions to a public adjudicative body; it protects neither fraudulent conduct that ultimately leads to the filing of a petition nor does it protect private adjudications carried out before a privately selected arbitrator rather than carried out before a governmental entity.  Secondly, even if *Noerr-Pennington* applied, the "sham" exception to *Noerr-Pennington* also applies in this case.  The "sham" exception removes *Noerr-Pennington* protection when a petition was objectively and subjectively unreasonable.  A petition filed to enforce a fraudulent scheme is not objectively and subjectively reasonable.

**Jurisdiction**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.  Plaintiffs' complaint is a related, rather than a core, proceeding under 28 U.S.C. § 157(b).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## Analysis

The Court considers the *Noerr-Pennington*, subject matter jurisdiction, and related arguments separately below.

### i. *Noerr-Pennington*

The *Noerr-Pennington* doctrine generally precludes liability for damages arising from a defendant's petitioning of a government branch. *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns*, 858 F.2d 1075, 1082 (5th Cir. 1988). The doctrine originated in the antitrust setting and precludes antitrust liability for damages arising out of lobbying or otherwise trying to influence a legislative branch. *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961).

In *Noerr*, trucking companies and associations brought an antitrust claim against railroad companies and associations alleging that defendants were monopolizing the long-distance transportation market by lobbying for state legislation that precluded various trucking activities. *Id*. at 128–31. The trucking entities sought an injunction and damages arising from the consequence of the legislation lobbied for by the railroad entities. *Id*. at 130.  The Court held that parties could not be held liable under the Sherman Act for efforts to influence legislation, even when the legislation directly harms a competitor. *Id*. at 137.

The Court based its holding on principles of representative democracy and the First Amendment's guaranty of the right to petition the government. *Id*. at 137–38. The Court reasoned that representative democracies depend on citizens' ability to freely advocate their interests to elected representatives. *Id.* Imposing liability on individuals for lobbying their representatives would impermissibly chill the citizen participation that forms the foundation of representative democracies. *Id*. The Court noted:

> In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives.  To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity . . .

*Id.*

The Court also noted that imposing antitrust liability for lobbying efforts would violate the First Amendment's guaranty of the right to petition the government. *Id*. at 138 ("The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms.").  The Court noted that the fact that legislation may cause direct harm to a competitor, or that the parties may have engaged in unethical activities, did not influence the result. *Id*. at 140–44. The Sherman Act was not designed to police political activity. *Id*. at 140–41.

Subsequently, the doctrine has been extended in two respects.  *Noerr-Pennington* immunity has been expanded to protect against non-antitrust claims. *Video International*, 858 F.2d at 1084 ("Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, other circuits have expanded it to protect first amendment petitioning of the government from claims brought under federal and state laws, including section 1983 and common-law tortious interference with contractual relations.").  *Noerr-Pennington* has also been expanded to cover petitions to government branches besides state and federal legislatures.  The doctrine now applies to petitions of legislative, executive, administrative, and judicial branches. *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972) (noting that the Constitutional basis for the Court's *Noerr* opinion "governs the approach of citizens or

groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government.").

### a. Application of *Noerr-Pennington* to this Case

The Court declines to extend *Noerr-Pennington* to this case. The Court finds that *Noerr-Pennington* has no application at all where the defendant's petition to the government was but an attempt to further a fraudulent scheme constructed prior to the petition and the fraudulent scheme rather than the petition forms the basis of Plaintiffs' claims.

Plaintiffs' complaint is focused not on the Amway Defendants' petition to the District Court, but the Amway Defendants' conduct in creating a sham arbitration scheme to deprive Plaintiffs of their right to petition an unbiased tribunal for redress of their claims. All damages Plaintiffs seek ultimately arise from the allegedly fraudulent arbitration scheme. Plaintiffs are not contending that the Amway Defendants' petitions to the District Court constituted a breach of contract, fraud, misrepresentation, or conversion. Rather, Plaintiffs contend that the creation of the arbitration scheme and concealing facts with respect to the nature of the arbitration proceeding, not a petition to the District Court, was the unlawful conduct that caused the underlying injury. The development and implementation of the arbitration scheme forms the basis of Plaintiffs' claims.

The Amway Defendants' petitions to the District Court were one aspect of carrying out the scheme and contributed to the damages that Plaintiffs seek, but the petitions are not a fundamental part of Plaintiffs' complaint. Unlike the cases cited by the Amway Defendants, the petitions to the District Court are more of a factual recitation of how the allegedly fraudulent arbitration occurred. It is the arbitration—and not the referral to arbitration—that is at the heart of the complaint. All of the cases cited by the Amway Defendants involve claims that the

petition itself was unlawful and the underlying cause of injury.

Indeed, a private arbitration arrangement is the antithesis of the very public rights that *Noerr-Pennington* seeks to protect.  The very purpose of private arbitration is to allow parties to resolve their disputes by an agreed method rather than through the public forum of the government-operated courts.  Congress has approved this private mechanism and persons entering into contracts are free to agree to arbitrate.  But, the fact that Congress allows private contracts does not convert those private contracts into public fora.  Parties have chosen to leave the public avenues for redress and compensation and rely on private mechanisms.  It would be presumptuous of this Court to now endow such a private mechanism with the cloak of the government.

The Court rejects Amway Defendants' attempts to apply *Noerr-Pennington* to Plaintiffs' complaint.  Even if *Noerr-Pennington* did apply to Plaintiffs' claims, the "sham" exception precludes its application to this case for two independent reasons.

**b.** *Noerr-Pennington Exceptions*

*Noerr-Pennington* immunity is not absolute.   Courts have recognized a "sham" exception. *Video Int'l*, 858 F.2d at 1082. The "sham" exception has proven to be an elastic doctrine, the reach of which has varied among courts and contexts.  Confusion arises from the fact that the "sham" exception was originally conceived in the antitrust context, but *Noerr-Pennington* immunity has been expanded outside the antitrust context.[3]  The Supreme Court has noted that the *Noerr-Pennington* doctrine should be applied differently depending on what

---

[3] Courts have also recognized a "co-conspirator" exception to *Noerr-Pennington* immunity. *Video Int'l*, 858 F.2d at 1082–83. However, the Supreme Court appears to have abrogated the co-conspirator exception, at least in the antitrustantitrust context. *City of Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 382–83, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 861 n.9 (5th Cir. 2000); *Empress LCC v. City and County of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005).  Given the uncertain state of the "co-conspirator" exception, the Court declines to consider its application to this case.

branch of government is being petitioned.  In *Noerr*, the Supreme Court noted that unethical behaviors that would not be tolerated in other contexts are nevertheless allowed without punitive repercussions in the political context. *Id.*  In a later case, *California Motor Transport Co*., the Supreme Court noted that the same standard could not also be allowed in the judicial context. *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972). The Supreme Court has defined the "sham" exception within the litigation context as including a two-part inquiry involving an objective and subjective component.  "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993).  The second part asks whether the defendant filed the petition with the subjective intent of winning the objectively reasonable petition, as opposed to a nefarious intent, like harming a competitor or retaliating against a whistle-blowing employee. *Id.* (quoting *Noerr*, 365 U.S. at 144; *Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991)); *Bill Johnson's Rests., Inc.*, 461 U.S. 731, 743–44, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983) ("Therefore, we hold that it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of rights protected by § 7 of the NLRA.").

The Amway Defendants contend that the "sham" exception does not apply, at least to their conduct before the District Court, because their petition to the District Court was objectively reasonable and they fully intended to achieve the objective purpose of the petition. The Amway Defendants contend that the fact that the District Court initially enforced the arbitration provision and issued a judgment in the Amway Defendants' favor supports the objective reasonableness of their petition.  The Amway Defendants also contend that they filed

the District Court petition with the intent to enforce the arbitration scheme and obtain the judgment rather than with an unrelated nefarious intent.

At trial, the Amway Defendants may prevail on this issue.  Nevertheless, in this motion to dismiss, the Court must assume that the Amway Defendants' conduct was for the reasons alleged by Plaintiffs.  Plaintiffs' allegations are consistent with the Fifth Circuit's decision, and averments regarding the Defendants' state of mind may be made generally.  FED. R. CIV. P. 9.

The Court rejects the Amway Defendants' contentions.  The Court cannot find that a party acted with objective reasonableness when the reasonableness depends on a belief in the success of a fraudulent scheme.  If a party has rigged the process, it may have an objectively reasonable belief that the rigging of the process will lead to a successful outcome.  But the belief stems from the rigging, not the merits of the petition.

If Plaintiffs' allegations are correct, then the Amway Defendants' beliefs about the success of their petitions were contingent on their belief that their alleged fraudulent scheme would be successful and remain unexposed.  Stripping the petition of the alleged fraud, and assuming the fraud allegations are correct, the Amway Defendants' could not have had an objectively reasonable belief that a fraudulent arbitration scheme could be enforced and lead to a judgment against the victims of the fraud.  A contrary interpretation of the "sham" exception would allow parties to avoid the exception by committing fraud.  Such a result would be contrary to the purposes of *Noerr-Pennington*, justice, and basic common sense.

The Supreme Court has previously held that lawsuits lacking a reasonable basis are not protected. *Bill Johnson's* at 743 ("suits lacking a 'reasonable basis' . . . are not within the scope of First Amendment protection"). Because the Court finds that Plaintiffs may be able to prove that the petition was not objectively reasonable, the Court will not assume that the Amway Defendants filed the petition with subjective good faith. The Court finds that the plaintiffs should be allowed the opportunity to prove the merits of their complaint.

The Supreme Court has also held that the "sham" exception applies when a defendant's conduct had the effect of depriving the plaintiffs of their First Amendment right to petition the government. *Cal. Motor Transport Co*, 404 U.S. 508. The right to petition a court does not include the right to preclude nothers from exercising their equal right to petition the court. Accordingly, *Noerr-Pennington* immunity does not protect a defendant from conduct that effectively stripped the plaintiffs of their right to petition a court.

The *California Motors* Court held that, within the judicial context, *Noerr-Pennington* does not apply when a party's conduct within the judicial setting produces an illegal result. The Court explained:

> [I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed . . . Such an expansive interpretation of the constitutional guarantees of speech and press would make it practically impossible ever to enforce laws against agreements in restraint of trade as well as many other agreements and conspiracies deemed injurious to society.

*Id*. at 514 (quoting *Giboney v. Empire Storage & Ice. Co*., 336 U.S. 490, 69 S. Ct. 684, 93 L. Ed. 834 (1949)).

Based on the principal that a constitutional right cannot be used to violate another's rights with impunity, the Court held that *Noerr-Pennington* does not apply when the petition at issue is used to deprive another of their right to petition. The Court held:

> In the present case, however, the allegations are not that the conspirators sought 'to influence public officials,' but that they sought to bar their competitors from meaningful access to adjudicatory tribunals and so to usurp that decision making process . . . such a purpose or intent, if shown, would be 'to discourage and ultimately to prevent the respondents from invoking' the processes of the administrative agencies and courts and thus fall within the exception to Noerr.

*Id.* at 511–12. One cannot cleanse unlawful conduct by conducting the unlawful conduct through a lawful medium. The right to petition the government does not include the right to bribe a public official. The right to file a lawsuit does not include the right to tamper with a jury. The right to access a public park will not immunize liability for an assault in the park. The right to petition a court does not include the right to file a false or frivolous claim. *Id.* at 512. "First Amendment rights may not be used as the means or the pretext for achieving 'substantive evils.'" *Id* at 515 (quoting *NAACP v. Button*, 371 U.S. 414, 444, 83 S. Ct. 328, 343, 9 L. Ed. 2d 405) (1963)); *Bill Johnson's Rests., Inc.*, 461 U.S. at 743 ("The first amendment interests involved in private litigation—compensation for violated rights and interest, the psychological benefits of vindication, public airing of disputed facts—are not advanced when litigation is based on intentional falsehoods or on knowingly frivolous claims . . . [j]ust as false statements are not immunized by the First Amendment right to freedom of speech . . . baseless litigation is not immunized by the First Amendment right to petition.").

If Plaintiffs' allegations are correct, then Amway Defendants are not entitled to *Noerr-Pennington* immunity under *California Motor Transport*. *Id*; *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 862 (5th Cir. 2000) ("In *California Motor Transport*, the Supreme Court held that First Amendment rights may not be used to deter competitors 'from having free and unlimited access to the agencies and courts.'"). If Plaintiffs' allegations are proven, then the Amway Defendants deprived Plaintiffs' of their right to petition to the District Court for fair and impartial redress of their claims by creating an unlawful, sham arbitration proceeding and attempting to enforce the

arbitration proceeding through petitions to the District Court.

The Court does not read *Noerr-Pennington* immunity so broadly as to protect a party's attempts to enforce an unlawful judgment obtained through a sham arbitration proceeding consciously designed to deprive a litigant of their right to petition a court for redress for their claims. None of the cases cited by the Amway Defendants allegations contain factual allegations similar to those asserted by Plaintiffs. None involved attempts to enforce a judgment obtained through a fraudulent arbitration scheme. Nor have the Amway Defendants articulated any policy basis for extending *Noerr-Pennington* to protect a party's attempt to profit from a fraudulent scheme. If the Court accepted Amway Defendants argument, the Court would be deprived of Rule 11 and contempt authority. Courts could not police the conduct of litigants. No authority supports extending *Noerr-Pennington* in a manner that would strip Courts of their inherent authority to regulate the conduct of those who avail themselves of the Court.

### ii. Jurisdiction

The Amway Defendants contend that the Court lacks subject matter jurisdiction over Plaintiffs' complaint because Plaintiffs' claims will have no effect on the Morrison estate.

### a. Section 1334

Section 1334 defines a district court's subject matter jurisdiction over bankruptcy matters. 11 U.S.C. § 1334. Section 157(a) allows district courts to refer to bankruptcy courts bankruptcy matters over which the district court has jurisdiction. 11 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district."). The United States District Court's General Order of Reference automatically refers these matters to the bankruptcy judges for this district. *In re Referrals to*

*Bankruptcy Judges*, General Order 2005–6 (S.D. Tex. March 10, 2005). Accordingly, the jurisdictional analysis must begin with consideration of whether a district court has jurisdiction over the bankruptcy matter.

Section 1334 provides that district courts have subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Generally, a matter arises under title 11 "if it invokes a substantive right provided by title 11." *In re Southmark*, 163 F.3d at 930. Generally, a matter arises in a case under title 11 if it, "by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97.

"Related to" jurisdiction includes matter that could conceivably have an effect on the bankruptcy estate. A matter is "related to" a case under title 11 if the adversary proceeding's outcome may "both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d at 1022. An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). The possibility that a suit may ultimately have no effect on the estate is not enough to conclude that there would be no *conceivable* effect. *Id.* "Certainty or even likelihood of such an effect is not a requirement." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2001) (citing *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 858 (5th Cir. 1999)).

### b. Analysis

The Amway Defendants contend that the trustee for the Morrison estate abandoned the litigation at issue through an agreed stipulation and Plaintiffs' complaint would not otherwise

affect the Morrison estate.

The February 5, 2007, Amended Stipulation and Order Approving Trustee's Abandonment of Litigation Interests provides:

> The Trustee hereby abandons, pursuant to Bankruptcy Code Section 544, all the estate's interests, if any, in that certain litigation currently pending before the United States Court of Appeal for the Fifth Circuit under Appeal No. 06-20138 (the "Appeal") and any and all future litigation which may result following the appeal.

The Amway Defendants and Plaintiffs offer alternative readings of the release. The Amway Defendants contend that the present bankruptcy adversary falls under the "all future litigation which may result following the appeal" because the Fifth Circuit's appellate ruling vacating the District Court's order made possible the present bankruptcy adversary. Plaintiffs contend that the release was limited to claims asserted in the original District Court lawsuit and the "all future litigation" clause refers only to continued litigation of the District Court lawsuit that would result from the appellate ruling.

The Court finds that the release is unambiguous. The provision's plain language provides that "all future litigation" following the appeal is released. Plaintiffs' contention may have been more persuasive if the provision had read: "all future litigation resulting from the appeal" is released. However, the release is broader than Plaintiffs contend, releasing all future litigation "which may result *following,*" rather than from, the appeal. Accordingly, the Court finds that the Morrison estate released its claims against the Amway Defendants. Neither Morrison the individual nor the trustee for the Morrison estate are proper parties to this adversary.

Despite the Morrison estate's release, the Court still has jurisdiction over the other Plaintiffs. Releases were not executed by the trustees of the other estates joined in this

complaint.[4]  Plaintiffs' claims could undoubtedly have a conceivable effect on the bankruptcy estates of the other Plaintiffs.

In a multi-party suit, the jurisdictional analysis is not limited to consideration of a single bankruptcy case.  As the Court has previously held:

> The jurisdictional test is not whether each cause of action relates to or arises in or under the *Rodriguez* bankruptcy case.  The test is whether each cause of action relates to or arises in or under *any* bankruptcy case.  Adversary proceedings are not filed in bankruptcy cases.  Adversary proceedings are filed separately from a bankruptcy case.  An adversary proceeding can be filed long after a bankruptcy case has been filed and even after a bankruptcy case has been closed.  An adversary proceeding is given its own adversary proceeding number.  The docket sheet for an adversary proceeding shows a case relationship solely for administrative—not jurisdictional—reasons.  A docket sheet itself can neither create nor destroy jurisdiction.

*Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 454–55 (Bankr. S.D. Tex. 2008).

The Amway Defendants also note that some Plaintiffs may not have listed the claims within their bankruptcy schedules.  A debtor's failure to list a claim in the debtor's bankruptcy schedules can judicially estop the debtor from latter prosecuting that claim for the debtor's own benefit.  *Kane v. Caillouet*, 535 F.3d 380, 386 (5th Cir. 2008); *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334 (5th Cir. 2004). If estoppel applied, then Plaintiffs would not have claims that could affect any estates.

However, the Fifth Circuit has held that judicial estoppel does not apply when the Trustee seeks to bring the claim on behalf of the estate.  *Kane*, 535 F.3d at 387.  In the latter case, the Trustee is bringing the claim to benefit innocent creditors, rather than the debtor bringing the claim to benefit the debtor at the creditors' expense.  *Id*. In any event, the exclusion of the claims

---

[4] The Amway Defendants also contended that the trustees of the bankruptcy estates of the named plaintiffs have not joined the complaint.  On February 18, 2009, J. Craig Cowgill, an attorney assisting lead counsel Brock Akers in the bankruptcy adversary, filed an Affidavit stating that the trustees of the estates of six named plaintiffs consented to Akers bringing this adversary on behalf of their estates (docket #55).

from the schedules is not dispositive of whether Plaintiffs would be estopped.  It is a fact intensive inquiry.  *Id.* The Amway Defendants have not demonstrated or alleged that Plaintiffs would be estopped from asserting their claims or that, even if Plaintiffs were estopped, that the trustees of Plaintiffs' bankruptcy cases could not assert the claims.

### iii. Remaining Arguments Raised by All the Amway Defendants

The Amway Defendants also seek dismissal on the following basis: (a) Plaintiffs' choice of forum; (b) statute of limitations; (c) standing; and (d) Rules 8 and 9.  The Court considers the arguments separately below.

#### a. Forum

The forum arguments were raised in the Amway Defendants motions for withdrawal of the reference.  The Court considered and rejected the forum arguments in the Court's Report and Recommendation on the Amway Defendants' motions for withdrawal of the reference.

#### b. Statue of Limitations

The statute of limitations argument is too factually intensive to resolve at this stage in the litigation.  Plaintiffs' complaint implicates multiple statutes of limitation ranging from three to six years.  Plaintiffs' complaint also alleges facts that could implicate a tolling doctrine.  Without a factual inquiry, the Court cannot resolve the Amway Defendants' statute of limitations argument.[5]

#### c. Standing

Generally, a debtor's causes of action are estate property that the trustee has exclusive standing to pursue. The filing of a bankruptcy petition creates an estate that is composed of "property of the estate." 11 U.S.C. § 541(a); *Highland Capital Mgmt. LP v. Chesapeake Energy*

---

[5] The Amway Defendants also suggested that the District Court's Order on Plaintiffs' Motion to Vacate found that Plaintiffs were aware of facts that would preclude operation of the Discovery Rule.  The District Court's Order was reversed by the Fifth Circuit and accordingly bears no weight on this adversary proceeding.

*Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Id.* "The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law." *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584 (citing *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983); *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1283 (5th Cir. 1994)).

"If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it." *Id.* (citing *In re Educators Group Health Trust*, 25 F.3d at 1284); *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584. "It is axiomatic that a trustee has the right to bring actions that will benefit the estate." *In re Schimmelpenninck*, 183 F.3d at 359.

Accordingly, the trustee rather than the individual debtor generally has standing to prosecute the debtor's claims. However, Plaintiffs have individual standing to assert the claims to the extent that Plaintiffs' claims are exempt. At this juncture, the Court can not discern whether individual Plaintiffs may assert claims on their own behalf. The Court will reconsider the Amway Defendants' standing objections after Plaintiffs file an amended complaint.

At the December 8th hearing, the Court stated that it would order Plaintiffs to file an Amended Complaint that specified which, if any, claims were owned by individual Plaintiffs rather than the trustees of Plaintiffs' bankruptcy estates. The Court also ordered the amended complaint to address Rule 8, Rule 9, and personal jurisdiction issues. The Court stated that Plaintiffs could file the amended complaint after the Court issued a Memorandum Opinion on the motions to dismiss. The Court declined to order Plaintiffs to immediately file an amended

complaint because the standing, Rule 8, and Rule 9 issues that gave rise to the need for an amended complaint would become moot if the Court's Memorandum Opinion granted the Amway Defendants' Motions to Dismiss.

On January 14, 2009, Plaintiffs filed a Motion for Leave to File Plaintiffs' Second Amended Original Complaint (docket #48). Plaintiffs appear to have filed the Second Amended Complaint to address the Court's issues with Plaintiffs counsel's authority to bring the complaint on behalf of all Plaintiffs' estates and the related subject matter jurisdiction issue. The proposed Second Amended Complaint did not address the Court's other requirements: (1) pleading facts establishing personal jurisdiction over IBOAI; (2) re-pleading of the fraud claims; and (3) clarifying what claims are owned by the individual Plaintiffs opposed to the Plaintiffs' estates. The Amway Defendants objected to Plaintiffs' motion, contending that the amendment was futile and would cause undue delay and prejudice, in part, because the Amended Complaint did not address the Court's re-pleading requirements. The Court agrees.

The proposed Second Amended Complaint addressed none of the Court's re-pleading requirements. The Amended Complaint only added trustees as plaintiffs to the suit and added approximately one page of pleadings related to the Amway Defendants' alleged failure to pay Plaintiffs' commission and reinstate their Distributor Agreements. Nothing would be accomplished by granting leave to file the proposed Second Amended Complaint when the Court would have to require Plaintiffs to file a Third Amended Complaint. Accordingly, the Court denies Plaintiffs' motion for leave. Plaintiffs shall file a new Second Amended Complaint consistent with this Memorandum Opinion and the Court's December 8th oral rulings. The amended complaint must be filed not later than July 10, 2009.

### d. Rule 8 and 9

The Amway Defendants contend that Plaintiffs failed to plead their claims consistently with the requirements of Rule 8 and 9.  The Court has ordered re-pleading and, if necessary, will reconsider the bulk of the Rule 8 and 9 objections after Plaintiffs submit an amended complaint.

### iv. Jody Victor

Jody Victor contends that Plaintiffs released him from all claims.  The Mutual Release provides that Plaintiffs release Mr. Victor of all claims:

> in any suit or arbitration arising out of the facts and circumstances at issue in this arbitration (as enumerated in CLAIMANTS' DEMAND FOR ARBITRATION), including without limitation *Morrison, et al. v. Amway, et al.,* No. H-98-00367, U.S. District Court, Southern District of Texas . . .

The plain language of the agreement releases Jody Victor only of claims asserted in the arbitration proceeding.  As discussed earlier, the claims asserted in the arbitration proceeding are distinct from the claims asserted in this adversary proceeding.  The Mutual Release did not release Jody Victor of the claims asserted in this adversary.[6]

### v. IBOAI

Defendant Independent Business Owners Association International ("IBOAI") seeks dismissal based on Plaintiffs' alleged failure to properly serve IBOAI and plead facts sufficient to establish this Court's personal jurisdiction over IBOAI.  During the December 8, 2008 hearing, the Court ordered Plaintiffs to serve IBOAI and plead jurisdictional facts for IBOAI in an amended complaint.

The docket sheet reflects that Plaintiffs served IBOAI with summons on January 15, 2009.  The Court denies IBOAI's motion to dismiss based on failure of service.

As discussed above, Plaintiffs have not yet filed an amended complaint consistent with

---

[6] Plaintiffs also allege that Mr. Victor obtained the Mutual Release by fraud.  Because the Court finds that the release does not encompass this lawsuit, that allegation is now moot.

the Court's oral rulings.  Pursuant to this Memorandum Opinion, Plaintiffs are ordered to file an amended complaint.  The Court will consider IBOAI's motion to dismiss based on insufficient personal jurisdiction allegations after Plaintiffs file the amended complaint.

**Conclusions**

For the reasons set forth above, the Court denies the Amway Defendants' motions to dismiss.  A separate order will be issued.

SIGNED **June 26, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE