IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/26/2009

| | | |
|---|---|---|
| IN RE: § | | |
| F. JOSEPH MORRISON; aka MORRISON § | | Case No. 05-45926 |
| UNLIMITED; aka RELIEF PHYSICIANS § | | |
| OF TEXAS, *et al*, § | | |
| Debtor(s). § | | |
| § | | Chapter 7 |
| § | | |
| F. JOSEPH MORRISON, *et al*, § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | | Adversary No. 08-03260 |
| § | | |
| AMWAY CORPORATION, ET AL, *et al*, § | | |
| Defendant(s). § | | Judge Isgur |

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

For the reasons set forth below, the Court grants in part and denies in part Defendants' Motions to Dismiss or Alternatively, Motions for Summary Judgment ("Motions to Dismiss") (docket nos. 76 and 77).[1]

### General Background

Plaintiffs are former distributors for Amway Corporation ("Amway"). Distributors sold Amway's line of household products and recruited additional distributors. Distributors derived profits from their individual sales and from the sales of their recruited distributors. Recruited distributors are called "down-liners" and recruiting distributors are called "up-liners."

All distributors had to execute a Distributorship Agreement Application. Under the Distributorship Agreement, distributors agreed to abide by Amway's Regulations and Rules of

---

[1] One Motion to Dismiss was filed by Dexter Yager, individually and d/b/a Yager Enterprises and Internet Services Corporation, and Jeff Yager ("the Yager Defendants"), Jody Victor ("Victor"), and the International Business Owner's Association International ("IBOAI"), formerly known as Amway Distributor's Association ("ADA") (docket no. 76). The same Defendants also filed the other Motion to Dismiss, but with Amway Corporation ("Amway") (docket no. 77).

Conduct for Distributors, and any amendments to those Rules and Regulations. Distributors were required to renew the agreement annually by signing either an automatic renewal agreement or an annual "Intent to Continue" form.

In September of 1997, Amway announced it was instituting a new arbitration program. Amway required distributors to sign an "Acknowledgment Form" or "Intent to Continue Form" containing a new arbitration provision. The arbitration provision required mandatory arbitration of "any . . . claim or dispute arising out of or relating to [an] Amway distributorship, the Amway Sales and Marketing Plan, or the Amway Rules of Conduct (including any claim against another Amway distributor, or any such distributor's officers, directors, agents or employees, or against Amway Corporation, or any of its officers, directors, agents or employees)." However, the Acknowledgment Form also stated that the arbitration provision "automatically became part of your agreement with Amway." Most Plaintiffs did *not* sign the Acknowledgment Form.

In January of 1998, Plaintiffs filed a state court lawsuit alleging that Amway, related entities, and up-liners ("Defendants")[2] were improperly calculating distributions. Plaintiffs' claims ranged from defamation to RICO. Defendants removed the lawsuit to the Federal District Court and sought to stay the lawsuit to enforce a purported arbitration clause in their contracts with Plaintiffs.[3]

---

[2] The full list of Defendants includes Amway; the Yager Defendants; Donald Wilson, individually and d/b/a Wow International and Wilson Enterprises, Inc. ("the Wilson Defendants"); Randy Haugen, individually and d/b/a Freedom Associates, Inc., Freedom Tools Inc., and All Star Production Co. ("the Haugen Defendants"); John Sims, individually and d/b/a Sims Enterprises ("the Sims Defendants"); Victor, individually and d/b/a JEV, Inc. ("the Victor Defendants"); and IBOAI.

[3] Two separate state court lawsuits were filed, both of which asserted similar claims. The parties refer to one suit as the Morrison Suit and the other suit as the Hamilton Suit. The suits remain separate suits in the District Court, but members from both groups have joined in this complaint. The present adversary proceeding includes parties from both suits.

In the Federal District Court, Plaintiffs challenged the enforceability of the arbitration provision. Plaintiffs alleged that only one-third of Plaintiffs had executed the Acknowledgment Form and that even if Plaintiffs had executed an agreement that incorporated the arbitration provision, the provision was unconscionable and therefore, unenforceable. The District Court rejected Plaintiffs' arguments and issued a memorandum opinion and order staying the lawsuit pending arbitration. *Morrison v. Amway Corp.*, 49 F. Supp. 2d 529 (S.D. Tex. 1998). The District Court found that Plaintiffs had agreed to the arbitration provision through execution of the Distributorship Agreements. *Id*. at 533. The District Court noted that the Distributor Agreements required distributors to abide by Rules of Conduct and other rules, requirements, and regulations, as amended from time to time. *Id*. The District Court reasoned that the arbitration provision constituted a rule, requirement, or regulation under the Distributor Agreement. *Id*.

The District Court also held that the arbitration provision was not unconscionable. *Id*. at 533–34. The District Court found that Plaintiffs failed to demonstrate that Amway coerced the arbitration provision upon Plaintiffs through excessive bargaining power or greater sophistication. *Id*. at 534. Nor did Plaintiffs demonstrate that the substance of the arbitration provision was without any legitimate commercial purpose such that no reasonable person would agree to such a provision. *Id*.

The parties pursued arbitration from 2001 to 2004. After three weeks of evidentiary hearings and post-hearing briefing, the arbitrator found for Plaintiffs on Defendants' counterclaims and for Defendants on Plaintiffs' claims. Accordingly, the arbitrator found that both Plaintiffs and Defendants were prevailing parties entitled to legal fees. After an evidentiary hearing on legal fees, the arbitrator awarded legal fees of approximately $1,000,000.00 to Plaintiffs and legal fees of approximately $7,000,000.00 to Defendants. The arbitrator awarded

Defendants a judgment in the amount of the difference, approximately $6,000,000.00. Plaintiffs were held jointly and severally liable for the $6,000,000.

Plaintiffs filed a motion to vacate the $6,000,000.00 judgment, alleging that the arbitrator had an impermissible conflict because she was trained by Defendants. On September 15, 2005, the District Court issued an order denying the motion. *Morrison v. Amway*, Civil Action No. H-98-0352 (S.D. Tex. Sept. 15, 2005). The District Court reasoned that Plaintiffs knew or should have known that the arbitrator was selected and trained by Defendants. *Id*. Because Plaintiffs knew or should have known of a potential conflict before the arbitrator awarded the judgment, the District Court held that Plaintiffs waived their objections. *Id*.

Numerous Plaintiffs filed individual bankruptcy petitions in response to the judgment. Amway or its successor in interest, Alticor, filed proofs of claim in the individual bankruptcies for the full amount of the judgment.

Plaintiffs appealed the District Court orders staying litigation and denying the motion to vacate. On February 6, 2008, the Fifth Circuit reversed the District Court's orders. *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008). The Fifth Circuit held that the arbitration provision was unenforceable because Amway could unilaterally amend the provision and make amendments retroactive. *Id*. at 254–57. The Fifth Circuit remanded the lawsuit to the District Court. *Id*. at 258.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## Procedural Background

Plaintiffs filed this adversary proceeding on July 21, 2008 (docket no. 1). On October 23, 2008, Defendants responded with Motions for Withdrawal of Reference (docket nos. 15 and 17)

and Motions to Dismiss (docket nos. 16 and 18). On June 26, 2009, the Court issued its Order and Memorandum Opinion denying Defendants' Motions to Dismiss (docket nos. 60 and 61) and its Recommendation to the District Court to deny Defendants' Motions for Withdrawal of Reference (docket no. 59). The District Court adopted the Court's Report and Recommendation and denied Defendants' Motions for Withdrawal of Reference on July 1, 2009. *Morrison v. Amway*, 409 B.R. 384 (S.D. Tex. 2009). Defendants have appealed this Court's June 26, 2009 Order and Memorandum Opinion denying their Motions to Dismiss (docket nos. 66 and 67).

In the Court's June 26, 2009 Memorandum Opinion, the Court reserved judgment on certain issues until Plaintiffs filed an amended complaint (docket nos. 60 and 61). The Court ordered Plaintiffs to file an amended complaint that addressed standing issues, Rule 8 and Rule 9 pleading requirements, and personal jurisdiction issues. Plaintiffs filed their Second Amended Complaint on July 27, 2009 (docket no. 75) and Defendants filed their new Motions to Dismiss on August 17, 2009 (docket nos. 76 and 77). On September 11, 2009, the Court heard oral arguments on Defendants' new Motions to Dismiss and ordered the parties to submit post-hearing briefs. This Memorandum Opinion addresses Defendants' new Motions to Dismiss Plaintiffs' Second Amended Complaint.

### **Plaintiffs' Second Amended Complaint**

In Plaintiffs' Second Amended Complaint, Plaintiffs allege that Defendants:

- Conspired to insulate themselves from liability to Plaintiffs by establishing an arbitration scheme that ensured Plaintiffs' claims would be denied.

- Selected and indoctrinated the arbitrator to ensure a favorable ruling.

- Failed to disclose the true nature of the selection or training process or the fact that Plaintiffs could be held liable for Defendants' arbitration costs.

Plaintiffs allege that if they had known these undisclosed facts, they would have dismissed their claims rather than pursuing them in arbitration. After the arbitrator awarded the

judgment, Plaintiffs allege that Defendants' attempts to enforce the judgment caused Plaintiffs' individual bankruptcy filings and associated financial losses. Plaintiffs allege that Defendants offset the now-vacated judgment by refusing to pay Plaintiffs' down-line sales commissions and thereafter refusing to renew Plaintiffs' Distributor Agreements.

Based on Defendants' alleged scheme to defraud Plaintiffs of their claims and the Defendants' subsequent attempts to enforce the vacated arbitration judgment, Plaintiffs assert causes of action for fraud, misrepresentation, negligent misrepresentation, breach of contract, breach of fiduciary duty, breach of duty of the duty of good faith and fair dealing, civil conspiracy, joint enterprise, and conversion. Plaintiffs seek actual damages, legal fees and costs, and exemplary damages.

### **Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint**

Defendants[4] seek dismissal on several grounds:

1. Standing;

2. Statute of Limitations;

3. The Noerr-Pennington Doctrine; and

4. Failure to state:

    a. A fraud claim;

    b. A claim for civil conspiracy to commit fraud;

    c. A claim for breach of contract or breach of an implied covenant of good faith and fair dealing;

    d. A claim for wrongful conversion; and

    e. A claim for breach of fiduciary duty.

The Court considers each of Defendants' arguments below.

---

[4] The Motions to Dismiss were filed by Amway, the Yager Defendants, Victor, and IBOAI. Therefore, the Court's rulings apply only to these moving Defendants. The Court notes that the Haugen Defendants, the Wilson Defendants, and the Sims Defendants filed a Motion to Join portions of one of the Motions to Dismiss (docket no. 96). The Court will issue a separate opinion addressing the Motion to Join.

**1. Standing**

Plaintiffs' Second Amended Complaint names a series of plaintiffs that can be divided into two categories: (1) Individuals, each of whom was jointly and severally liable for the arbitration award; and (2) Chapter 7 Trustees in Chapter 7 bankruptcies that were filed as a result of the alleged underlying conduct of Defendants.

Generally, a debtor's causes of action are estate property that the trustee has exclusive standing to pursue. The filing of a bankruptcy petition creates an estate that is composed of "property of the estate." 11 U.S.C. § 541(a); *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case.'" 11 U.S.C. § 541(a). "The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law." *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584 (citing *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983); *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1283 (5th Cir. 1994)).

"If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it." *Id.* (citing *In re Educators Group Health Trust*, 25 F.3d at 1284). "It is axiomatic that a trustee has the right to bring actions that will benefit the estate." *In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir. 1999). Accordingly, the trustee, rather than the individual debtor, generally has standing to prosecute the debtor's claims.

Of the individual Plaintiffs named, only the Morrisons have standing, but the Court lacks the authority to consider their claims. The Morrisons' claims have been abandoned by their Trustee.

The Amended Stipulation and Order Approving the Morrisons' Trustee's Abandonment of Litigation states that the Trustee "abandons, pursuant to Bankruptcy Code Section 554, all of the estate's interests, if any, in [the appeal of the arbitration award] and any and all future litigation which may result following the appeal."  (Case no. 05-45926, docket no. 77).  The abandonment "is subject to any and all rights, claims and defenses pursuant to applicable law." (Case no. 05-45926, docket no. 77). Based on these provisions, there was a relinquishment rather than a release.

In the Court's June 26, 2009 Memorandum Opinion, the Court characterized the Trustee's abandonment of the Morrisons' claims against Amway as a release of the claims.   As to the estate and Trustee, the abandonment relinquished all rights to the claims and neither the Estate nor the Trustee may now assert those claims.  The Court's June 26, 2009 opinion erred when it stated that this relinquishment applied to the Morrisons (individually) as well.  *See Ohio v. Kovacs*, 469 U.S. 274, 285 n.12; 105 S.Ct. 705; 83 L. Ed. 2d 649 (1985).  The effect of the abandonment was only to relinquish any interest held by the Estate.

As to the rights that may now be owned by the Morrisons, that issue must be resolved by a non-bankruptcy court.  This Court should not have stated that the effect of the abandonment resulted in a release by the Morrisons.  This Court does not have the authority to exercise supplemental jurisdiction. *Walker v. Cadle Co (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995). Accordingly, the Court (i) withdraws its prior conclusion with respect to the effect of the abandonment on the Morrisons; and (ii) dismisses the complaint by the Morrisons solely on the basis that this Court has no authority to hear such a complaint since it will have no effect on the estate and neither arises in or under the Bankruptcy Code. *See* 28 U.S.C. § 1334.   Inasmuch as the Court would be required to exercise supplemental jurisdiction to issue any judgment with

respect to any dispute between the Morrisons and the Defendants, the Court must dismiss the Morrisons as plaintiffs in this adversary proceeding.

## 2. The Statute of Limitations

The Court considered and rejected Defendants' statute of limitations argument in the Court's June 26, 2009 Memorandum Opinion on Defendants' prior Motions to Dismiss (docket no. 60). Defendants have appealed this issue to the District Court (docket nos. 66 and 67).

No new facts have come to light that would make any of Plaintiffs' fraud claims time-barred as a matter of law. Rather, Plaintiffs have reasserted facts that implicate the discovery rules under Texas and Michigan laws. The Court cannot resolve Defendants' argument without a factual inquiry into when Plaintiffs discovered, or should have discovered, their injuries as a result of the alleged fraudulent scheme. *See Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467 (5th Cir. 1999) (analyzing evidence in the record regarding Plaintiff's knowledge to determine when accrual began under Texas's discovery rule); *DXS, Inc. v. Siemens Medical Sys.*, 100 F.3d 462, 472 n.13 (6th Cir. 1996) (Under Michigan law, "[t]he date of accrual of a cause of action for statute of limitations purposes is a question of fact for the jury.").

Defendants argue that Plaintiffs discovered their injuries once Plaintiffs knew that arbitrators were to be selected and trained by Amway. However, this argument misconstrues Plaintiffs' fraud claims. Plaintiffs' fraud claims are based on Defendants' allegedly concealed conduct in devising a fraudulent arbitration scheme that involved impermissible ex parte training of the arbitrator, Anne Gifford, in the underlying lawsuit. Plaintiffs' allegations do not rest on the known facts that Amway selected and trained arbitrators.

Defendants also argue that the statute of limitations bars Plaintiffs' wrongful conversion claims because (1) the arbitration award was entered on January 13, 2005; and (2) the claims concern Amway's collection efforts on that award. However, Amway proceeded to collect the

arbitration award by withholding Plaintiffs' commissions from down-line sales and Amway's withholdings occurred during the pendencies of the individual bankruptcies.

First, the Court re-characterizes Plaintiffs' wrongful conversion claims as breach of contract claims because they are based on Amway's breach of the Distributorship Agreements that promise Plaintiffs down-line sales commissions. *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933 (5th Cir. 2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) ("[W]e have often stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.'") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co*., 320 F.2d 594, 606 (5th Cir. 1963)).

Second, Amway's withholdings of commissions occurred during the pendencies of the individual bankruptcies. The amended complaint gives examples of how commissions were withheld. Although these are the only examples, the cause of action is broadly asserted. The complaint does not set forth the specific dates on which commissions were due and not paid by Amway.

The statute of limitations on a breach of contract claim is generally four years under Texas law and six years under Michigan law. *Beavers v. Metro. Life. Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004, 16.051 (West 2009); *Mazur v. Young*, 507 F.3d 1013, 1026 (6th Cir. 2009); MICH. COMP. LAWS § 600.5807 (West 2009). The examples given in the complaint pertain to the Morrison and Councill bankruptcy cases. Although the Morrison examples do not give rise to an actual claim in this lawsuit, it is nevertheless instructive. The Morrisons filed for bankruptcy on August 29, 2005; the Councill petition was filed on October 14, 2005. Thus, even if the breach of contract claims arose on the first day of the bankruptcies, the earliest expiration date would be in 2009 under Texas law. This

adversary proceeding was filed July 21, 2008, well before the earliest deadline. The burden of proof on the affirmative defense of limitations is on the Defendants. *In re Hinsley,* 201 F.3d 638, 644-45 (5th Cir. 2000); *Warren Consolidated Schools v. W R Grace & Co*, 518 N.W. 2d 508 (Mich. Ct. App. 1994). The burden has not been satisfied.

The Court denies Defendants' Motions to Dismiss based on their statute of limitations argument.

### 3. The Noerr-Pennington Doctrine

The Court considered and rejected Defendants' Noerr-Pennington Doctrine argument in the Court's June 26, 2009 Memorandum Opinion on Defendants' prior Motions to Dismiss (docket no. 60). Defendants have appealed this issue to the District Court (docket nos. 66 and 67). No new arguments have been raised that persuade this Court that its initial decision was in error.

### 4. Failure to State Claims

#### a. Standard of Review

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted). To avoid a dismissal for failure to state a claim, "a plaintiff must plead specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (internal quotations and citations omitted).

A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the Court. FED. R. CIV. P. 12(d); FED. R. BANKR. P. 7012(b). Under Rule 56, summary judgment is appropriate

where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." FED. R. CIV. P. 56(e); FED. R. BANKR. P. 7056.

### b. Fraud Claims

A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) requires the circumstances constituting fraud to be pled with "particularity." FED. R. CIV. P. 9(b); FED. R. BANKR. P. 7009. Under Rule 9(b)'s particularity requirement, the party asserting the fraud claim must allege "the existence of acts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred." *In re Haber Oil Co.*, 12 F.3d. 426, 439 (5th Cir. 1994) (citing *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993); *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 ("[T]he Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent."). "At a minimum, [Rule 9(b)] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). The defendant's state of mind, however, may be generally alleged. *See e.g. Collmer v. U.S. Liquids, Inc.*, 268 F.Supp.2d 718, 723 (S.D. Tex. 2003).

Plaintiffs have alleged sufficient facts showing fraud under Rule 9(b). Plaintiffs state the following:

1. Amway introduced an arbitration program in the Fall of 1997 in anticipation of lawsuits between Plaintiffs and Amway over a request for a change in "up-line" leadership, commissions, ADA, and other matters.

2. Amway selected JAMS to administer its program. Plaintiffs were told JAMS independently created the roster of neutral arbitrators and that arbitration would be fair, economical, and beneficial to Plaintiffs.

3. Though Plaintiffs objected, the District Court in the underlying lawsuit compelled arbitration. Plaintiffs' picked Anne Gifford to be the arbitrator out of a list of eight, all of whom were part of the Amway JAMS program.

4. Ms. Gifford arbitrated and found in favor of Amway.

5. After arbitration, Plaintiffs discovered that Amway concealed the true fraudulent nature of the arbitration program and misrepresented that JAMS and its arbitrator were neutral parties to arbitration.

   a. John Pierce and Bill Abraham, among others, found prospective arbitrators around the country that they reviewed and culled.

   b. Amway invited fifteen prospective arbitrators out of a list of several hundred for the final cut and training. The training was recorded and video-taped.

   c. Videos from discovery show that training was an indoctrination session and not simply training with respect to Amway's culture and system.

   d. With respect to Ms. Gifford, she was shown ex parte videotaped presentations from five named Defendants. Victor and lead defense counsel, John Pierce, also privately met and interviewed Gifford for two hours, off camera, as her final interview session. Victor trained Ms. Gifford on the application of substantive law to facts in Amway cases. At least one example discussed during Ms. Gifford's training mirrored the facts of the underlying dispute.

   e. JAMS provided affidavits in support of Amway motions to compel, in violation of JAMS' own ethics rules that bar JAMS agents from serving as witnesses in pending cases.

After describing the alleged fraudulent arbitration scheme, Plaintiffs specifically allege the following:

1. With respect to Amway, Amway represented that:

   a. The arbitration scheme was designed to be a fair and reasonable alternative to other dispute resolution methods.

   b. The arbitration scheme would benefit individual distributors, and was developed by IBOIA's predecessor, ADA, to ensure fairness and to represent the interests of distributors.

   c. Victor would not be involved in the dispute resolution procedures as it related to Plaintiffs.

    d. The list of prospective arbitrators was created by and reflects the selections of JAMS, a neutral dispute resolution provider.

    e. Amway's training would only be cultural and only be in terms of being placed on the list of prospective arbitrators.

    f. The arbitrators would conduct themselves in any manner that would not evoke bias and would have no relationships with any parties or counsel prior to an arbitration.

    g. All JAMS-selected arbitrators would have an obligation to disclose any information that might affect their neutrality.

    h. The ordinary rules and procedures for JAMS would be applied to the administration of the Amway arbitration plan.

    i. The law of Michigan would be fairly applied by JAMS and the arbitrator.

2. With respect to the Yager Defendants:

    a. Plaintiffs are all distributors in Dexter Yager's down-line.

    b. Dexter Yager and his son, Jeff Yager, who has taken over running the family's Amway business as incorporated as Internet Services Corporation, play a significant role in Amway's decision-making processes.

    c. Their long-time lawyer and agent, Bill Abraham, who consulted on Amway's arbitration scheme and its development, advised them of the scheme.

    d. As a result, the Yager Defendants participated in and gave "tacit approval" to the arbitration scheme.

    e. Through direct or implied representations or by omission, the Yager Defendants also committed the same misrepresentations that Amway did.

3. With respect to Victor:

    a. Victor was an architect of the arbitration scheme and directly participated in the training sessions of the arbitrators.

    b. Victor trained the particular arbitrator in the underlying lawsuit, Ms. Gifford. He trained her for hours in March, 1998.

    c. Victor discussed with Ms. Gifford the very fact scenario that was to be arbitrated with Plaintiffs in the underlying lawsuit.

    d. Victor misled Plaintiffs as to his actual involvement.

    e. Through direct or implied representations or by omission, Victor also committed the same misrepresentations that Amway did.

4. With respect to IBOIA:

    a. IBOIA's predecessor, ADA, purported to represent distributors' interests.

    b. However, ADA directly participated in the scheme to sell the arbitration as fair and beneficial, among other things, to Plaintiffs.

    c. Through direct or implied representations or by omission, IBOIA also committed the same misrepresentations that Amway did.

Plaintiffs have alleged the "who," "what," "where," "when," and "how" of the fraud.[5]

Rule 9(b)'s application is flexible and influenced by the circumstances of the case. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993).

> [T]he focus of a [Rule] 9(b) inquiry should be whether, 'given the nature and facts of the case and the circumstances of the parties, the pleading in question is sufficiently particular to satisfy the purposes of Rule 9(b). The rule has three purposes. First, to ensure that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense. Second, it eliminates those complaints filed 'as a pretext for discovery of unknown wrongs.' . . . Third, Rule 9(b) seeks to protect defendants from unfounded charges of wrongdoing which inquire their reputations and goodwill.'"

*Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 704 (S.D. Tex. 2004) (quoting *Mitchell Energy Corp. v. Martin*, 616 F.Supp. 924, 927 (S.D. Tex. 1985) (citations omitted)). Plaintiffs have alleged how the moving Defendants were involved in the arbitration scheme, enabling Defendants to respond and defend. Plaintiffs' descriptions assert factual scenarios and relationships that support Defendants' alleged involvement. The scheme was organized and carried out by Defendants. Because Plaintiffs have overcome their Rule 9(b) burden, the Court denies Defendants' Motions to Dismiss for failure to state a fraud claim under Rule 9(b).

---

[5] Plaintiffs have not pled with particularity "where" the fraud occurred. However, "where" the fraud occurred is not seriously disputed. As set forth above, the alleged fraud claims arise from an arbitration scheme implemented by Defendants. Defendants do not dispute that arbitration occurred. Therefore, Defendants cannot seriously dispute that they have not been adequately put on notice of "where" the alleged fraud occurred.

### c. Civil Conspiracy Claims

Plaintiffs assert that Defendants conspired to commit the fraudulent arbitration scheme. As such, Plaintiffs have asserted a civil conspiracy claim that has a fraud-based element. Under Rule 9(b), Plaintiffs' civil conspiracy claim must also meet the particularity requirements. *Lone Star Ladies Inc. v. Schlotzsky's Inc.*, 238 F.3d 363, 368-69 (5th Cir. 2001); *In re Am. Intern Refinery*, 402 B.R. 723, 2008 WL 2116411, *5 (Bankr. W.D. La. May 19, 2008); *In re Sharp Intern Corp.*, 302 B.R. 760, 770 (E.D.N.Y. 2003) ("Furthermore, to the extent the underlying breaches of fiduciary duty are based on fraudulent conduct, the complaint must meet the heightened pleading requirements of Rule 9(b) . . . .").

As discussed above, Plaintiffs have shown the factual bases for Defendants' involvement in the arbitration scheme. Defendants were aware of the manner in which arbitrators were selected, and were aware of Ms. Gifford's special training with Victor. Defendants participated in the scheme with this knowledge. Also, Plaintiffs have sufficiently pled facts to support the fraud claims on which the civil conspiracy rests. As a result, Plaintiffs' civil conspiracy claims are also sufficient under Rule 9(b). The Court denies Defendants' Motions to Dismiss these claims.

### d. Breach of Contract Claims

Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing are based on the alleged fraudulent arbitration scheme. Plaintiffs have adequately pled a fraudulent scheme orchestrated by Defendants that, if proven, would sustain these contract-based claims. However, Plaintiffs had a contract only with Amway. Thus, the Court grants Defendants' Motions to Dismiss Plaintiffs' contract-based claims against the moving Defendants, except Amway.

**e. Wrongful Conversion Claim Re-Characterized as a Breach of Contract Claim**

As discussed above, the wrongful conversion claim is actually a breach of contract claim. The Estates were owed commissions from down-line sales, which Amway did not pay. The Court finds that the Plaintiffs have alleged sufficient facts under Rule 8, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); FED. R. BANKR. P. 7008(a). The Court denies Defendants' Motions to Dismiss the breach of contract claims.

**f. Breach of Fiduciary Duty Claims**

Plaintiffs argue that Defendants breached their fiduciary duties by participating in the alleged fraudulent arbitration scheme. Texas law recognizes two types of fiduciary relationships:

> The first is a formal fiduciary relationship, which arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers. The second is an informal fiduciary relationship, which may arise from "a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship."

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex.App.—Houston [1st Dist.] 2003, no pet.) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)).

Michigan law recognizes that a fiduciary relationship arises between two persons when "each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith." *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 307 N.W.2d 761, 763 (1981). Fiduciary relationships exist between trustees and beneficiaries, guardians and wards, attorneys and clients, and doctors and patients. *Id.*

The Court need not choose between Michigan and Texas law. Under either Texas or Michigan law, the only moving Defendant to have had any type of fiduciary relationship with Plaintiffs is IBOIA, whose predecessor, ADA, was an association that represented Plaintiffs'

interests. Amway, the Yager Defendants, and Victor never had any relationships of trust or confidence with Plaintiffs. Instead, their relationships with Plaintiffs were at arms-length. As a result, the Court dismisses Plaintiffs' breach of fiduciary duty claims against all moving Defendants, except IBOIA.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part Defendants' Motions to Dismiss. The Court will issue a separate order.

SIGNED **October 26, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE